Maria, (of color,) vs. Atterberry.

---

MARIA of color vs. ATTERBERRY.

1. Under the Act of 1798, of the State of Kentucky, which authorizes a party to liberate his slaves, by an instrument of writing under his hand and seal, attested and proved in the county court by two witnesses, or acknowledged by the party in the court of the county in which he resides, the act of the court in receiving and determining the sufficiency of the proof, or in taking the acknowledgment, is a judicial act, and will be regarded as such in the courts of this State.

2. Where a deed of manumission was executed, and acknowledged by an Attorney, it is not necessary that the record should shew the proof of the execution of the power of attorney, but the order of the court, before which the deed was acknowledged, is conclusive as to the sufficiency of the proof of the execution of the power.

APPEAL from Howard.

BELT & CLARK, for Appellant.

Maria, (of color,) vs. Atterberry.

POINTS AND AUTHORITIES.

The plaintiff insists that the judgment was erroneous, and should be reversed, for the following reasons :

1. The circuit court erred in excluding from the jury, the record offered in evidence by the plaintiff, from Hart county court, in the State of Kentucky. See Laws of U. S. May 26, 1790, ch. 11; Ferguson vs. Hartwood, 7 Cranch 408.

The only issue under the pleadings presented on the record was the *assault* and *battery*, and under the plea of *not guilty*, court erred in rejecting said record. See Carney vs. Hampton, 3 Monroe's R. 228; Talbot vs. Williams, 2 Mar. 203, 4; J. J. Mar. 105-6. If defendants jutify imprisonment because plaintiff was a slave, they should have plead *specially*; Wheaton's Selwyn, Title, Assault and Battery, vol. 1, Ibidum, Title, False imprisonment, vol. 2, 917; Chitty's pleadings, vol. 1, 539-40, 744.

2. Any instrument in Kentucky, emancipates slaves. See the Digest agreed upon by counsel, in the bill of exceptions, Laws of 1800; also 2 J. J. Marshall 230; Fanny vs. Dejarnett's heirs, 3 Marshall's R. 495-6; Winney vs. Cartwright.

3. Court erred in rejecting the record in connexion with the testimony of Jesse Atterberry; and also in permitting Jesse Atterberry to testify, and then excluding his testimony from the jury.

By his (Atterberry's) testimony, it appears that Maria had acted as a free person some years before the death of Thomas Atterberry, dec'd. Administrator is, in law, presumed to know this, and placed on same ground as assent of adm'r to a legacy. See Nancy vs. Snell, 6. Dana 154; Lord Saye & Sele vs. Guy, 3 East. 131; Duppa vs. Mayo, 1 Sand. 278; 5 Coke's Rep. 12, b; Chamberlain vs. Chamberlain, 1 Chancery cases, 256; Bastard vs. Stuckey, 2 Lev. 209. When the assent is once given, it is irrevocable, Paamour vs. Yardley, Plowden 539 ; Young vs. Holmes, 1 Strange 70.

4. By the laws of Kentucky, the certificate of emancipation is evidence, when uncontradicted, of freedom, and by the laws of the U. S. all records of other States have the same effect in sister States, as at home; hence court erred in excluding a copy of the certificate of emancipation, in connexion with the testimony of Sashel Bynum.

5. Court erred in excluding from the jury the admission of Thomas Atterberry, dec'd. in his life time, that Maria was a free woman, and that he had freed her in Kentucky, and she had her free papers with

Maria, (of color,) vs. Atterberry.

her. This admission operates as an *estoppel* upon the representatives or the deceased.

6. Court erred in refusing to set aside non suit, and grant a new trial to plaintiff.

LEONARD, for Appellee.

### POINTS AND AUTHORITIES.

1. The plaintiff having been originally a slave in Kentucky, and claiming her freedom under the laws of that State, could only acquire it by the deed, or last will of her master, executed in the manner prescribed by the laws of Kentucky, to give it validity as an instrument of manumission, and the county court having no duty to perform, in relation to the instrument, other than to take the proof or acknowledgment of its execution, neither the order declaring that the acknowledgment had been taken, nor the certificate of freedom issued by the clerk, made out any title in the plaintiff to freedom. It devolved on her to show a deed of manumission from her master, executed with the formalities required by the statute, and nothing short of such a deed could go in evidence to the jury, to establish in her a right to freedom. Talbot vs. David, 8 Mar. 608; Donaldson vs. Judge, 2 Bibb 57.

2. When a deed of manumission is executed under a power, both the deed and the power must be attested and proved, or acknowledged in the manner prescribed by the statute. It is not sufficient that the deed is only attested, and proved or acknowledged, if the power be not so also; nor is it enough that the power is duly executed, if the deed be not in like manner executed with all the formalities required by the law. These formalities must be observed in relation to each instrument, the power, and the deed—any other construction would in effect repeal the statute. Now, here the order of the Hart county court, of April, 1837, even if read as the appellant desires, only establishes, that an acknowledgment of the execution of the deed was made in court, while there is no evidence whatever, of the proof by witness, or of the acknowledgment by the grantor, of the execution of the power.

3. The alledged deed of emancipation was not entitled to go to the jury, upon the proof or acknowledgment taken in the Hart county court, and there being no other proof of its execution, it was properly rejected for want of such proof.

4. Although the opinion of the circuit court, ruling out the paper offered in evidence, as the will of Thomas Atterberry, without any probate or any proof whatever of its execution, was excepted to below, that matter will not, it is presumed, be relied on here for error.

SCOTT, J., delivered the opinion of the court.

This was a suit for freedom brought by Maria, against Atterberry. Maria took a non suit, and after an unsuccessful motion to set aside, and for a new trial, has brought the case here by appeal.

In support of her right to freedom, Maria offered in evidence a transcript from the record of the county court of Hart county, in the State of Kentucky, authenticated in pursuance of the act of Congress of the 27th April, 1804. The act of liberation in the record, is in these words : "Thomas Atterberry, sen'r. of Hart county, by Richard Atterberry, his attorney in fact and agent—a deed of emancipation from Thomas Atterberry, freeing a certain negro woman by the name of Maria, aged —— years, five feet high, rather a yellow black, weighing about 120, investing the said negro woman with full freedom, which deed of emancipation is acknowledged in open court, and it is ordered that the clerk issue to said woman a deed of emancipation according to law." Power of attorney from Thomas to Richard Atterberry: "Know all men by these presents, that I, Thomas Atterberry, of Hart county, State of Kentucky, do make, constitute and appoint Richard Atterberry as my Attorney in fact, to *alien*, release and set free, my negro woman named Maria, and to assign my name as her security, that she don't become chargable to the county aforesaid, and to do singularly and severally, and every act necessary for to be done for the emancipation of said slave, that I could do in my own person, which when done shall be as valid in law, as if I had done it in my own proper person. Given under my hand and seal this 9th day of April, 1837.                              THOMAS ATTERBERRY. [*seal.*]

*Teste,*

ROBERT DORSEY & P. WELLS.

The following is a copy of the deed of emancipation referred to in the before recited order of court:

"I, Thos. Atterberry, sen'r, of Hart county, Kentucky, have this day, and doth by these presents emancipate and forever set free, my negro woman slave, Maria, to go out and forever free, and to have and

enjoy all the rights and privileges of a free woman of color. Given under my hand and seal, this 10th day of April, 1837.

THOMAS ATTERBERRY. [*seal.*]

By Richard Atterberry, his Agent and Attorney in fact."

Both of the foregoing instruments were certified, and have been recorded.

A certificate of emancipation made out' by the clerk, in pursuance of the order of the court, follows in the record, the entry of these instruments.

The record was authenticated as before said, under the act of Congress of 27th April, 1804. Objections were made to the reading of the record in evidence, and the same were sustained by the court.

The certificate of freedom granted in Kentucky, was recorded in Howard county, in this State, and a copy of this record in connexion with the testitmony of the recorder, was offered in evidence, the original certificate having been lost.

The testimony going to show that Thomas Atterberry had frequently declared that Maria was free, and that he had liberated her in Kentucky, was also offered in evidence. Also a will of Atterberry, liberating Maria. This will was without probate, and no evidence was offered in proof of its execution by the testator. All this evidence was rejected on the trial, and the rejection thereof, is the error complained of.

It was agreed that the laws of Kentucky, in relation to the emancipation of slaves, might be read in evidence in this court, although not spread upon the record.

An act of the Kentucky legislature of the 27th February, 1798, provides that it shall and may be lawful for any person, by his or her last will and testament, or by any other instrument in writing under his hand and seal, attested and proved in the county court by two witnesses, or acknowledged by the party in the court of the county where he resides, to emancipate, or set free his slave, who shall thereupon be entitled, and fully discharged from the performance of any contract entered into during his servitude, and enjoy his full freedom, as if he had been born free. And the said court shall have the power to demand bond with sufficient security of the emancipator, for the maintainance of any slave that may be aged or infirm, either in body or mind, to prevent him from becoming chargeable to the county; and every slave so emancipated shall have a certificate of his freedom from the clerk of such court, on parchment, with the county seal affixed thereto.

A statute of the same State, of the 15th December, 1800, provides

that every person of the age of eighteen years, being possessed of, and having a right to any slave or slaves, may, by his last will and testament, or by an instrument of writing, emancipate such slave or slaves.

It was contended by the appellee, Atterberry, that the appellant, Maria, could only obtain a right to freedom by showing a compliance with the terms of the statute, by which the mode of acquiring it is prescribed. That the court having nothing to do but barely receive the evidence in proof of the execution of the instrument or its acknowledgment, neither the order declaring that the acknowledgment had been taken, nor the certificate of freedom issued by the clerk, made out any title to freedom. That her right to freedom could only be established by the production and proof of a deed executed with the formalities required by the laws of Kentucky.

The case of Talbot vs. David, decided in Kentucky, in 1810, 2 Mar. R. 608, is cited in support of this view of the case. In the cause referred to, two orders were given in evidence. One of them was in these words, "February court, 1810. On motion of Jesse Griffith, ordered, that Jack, aged 29 years, Jane, aged 25 years, and George, aged 21 years, his slaves he manumitted and set free, agreeable to a deed which said Griffith has filed." The other was as follows: "Feb'y. term, 1810. On motion of Jesse Griffith, ordered that Jack, aged 29, Jane, aged 25, and George, aged 21, are manumitted." The court before which the cause was tried on these orders, and some parol evidence not affecting the question, instructed the jury that they were bound from the record to presume a deed of emancipation from Jesse Griffith to Jane, the slave above named, who was the mother of the plaintiff, David, duly executed. This instruction was deemed erroneous. The court of appeals holding, that the first of the above recited orders having been made by the clerk in a book unknown to the law, and unauthorized by it, was of no validity. With regard to the last order, the court after referring to the act of 1798, relative to the liberation of slaves, says, to effect the emancipation of slaves, that the requisites of this act must be complied with, there can be no question. But we are of opinion that the act cannot, upon any rational principle of interpretation, be construed to require of the court an order of manumission, to effect the liberation of a slave. The owner is the only person capable of releasing his slave from bondage, and the law has prescribed the mode by which it may be done, but the only act for the court to perform, is, to receive proof of the execution of the will or deed, by which the manumission may be effected. To give to the act of the court, in taking the proof, any *judicial effect*, it is true it is essential that an en-

try should be made in court, but *immediately upon that being done,* and without any order of manumission, the slave becomes *ipso facto* free, and released from all obligations of servitude.

Hence the court held, that the county court having no authority to make an order manumitting a slave, although there was a propriety in the law, presuming that to having been done correctly which is done by a court of competent jurisdiction, it cannot be conclusively inferred from such an order on the records, that a deed of manumission has been duly executed. But the court held, that even such an order was evidence to be left to a jury in proof of the existence of a deed of emancipation, the weight of which was to be ascertained by them. So this case only determines that an order of emancipation by the county court, is not necessary to confer freedom, and the law will not conclusively presume from the existence of such an order on the records, that a deed of emancipation has been duly executed. But the case is a very strong one in favor of the plaintiff. It shows that where a proper order is made by the court, that order is a judicial act. Indeed it cannot be pretended that the deed of emancipation, under the act of 1798, is effectual without the action of the court. The deed must be attested by two witnesses, and proved or acknowledged in open court, without which freedom cannot be imparted. The court must determine whether the proof or acknowledgment is sufficient. It is not bound to receive and record whatever proof or acknowledgment is offered, but the sufficiency of that which is offered, is judged of by the court, and this exercise of the judgment in determining its sufficiency or insufficiency, is a judicial act. It is not like the case of a deed for lands which passes title without any proof or acknowledgment and recording, formalities which are exacted merely for the protection of purchasers and creditors. The case of Talbot vs. David, cannot be read without coming to the conclusion, that had the order of the county court been formal, and contained the necessary facts, it would have been deemed conclusive as a judicial act, as to the right of David to freedom. If the entry in this case containing an acknowledgment of the deed of emancipation, would have been regarded as a judicial act by the courts of Kentucky, it is clear it must be so regarded here; and if such an entry there, would shew a right to freedom, the same entry properly authenticated would be as good evidence in our courts. This view of the subject answers the objection that the power of attorney should be shown by the record to have been proved or acknowledged; for, adopting the language of the court in the above case, that there is a propriety in the law, presuming that to have been correctly done, which

is done by a court of competent jurisdiction, we cannot suppose that the court would have made an entry, that Thos. Atterberry, sen., by his attorney in fact and agent, acknowledged a deed of emancipation, unless it had been satisfied that the attorney in fact had been properly constituted. Indeed, if any aid was wanting to a presumption so reasonable, it would be found in the fact that the power of attorney, and deed of emancipation, are found in the record immediately following the order of court, and it appears that they were cotemporaneously recorded. Other cases may here be referred to, showing that we are warranted in saying that the taking of the acknowledgement of an instrument is a judicial act. Where the acknowledgment or record is the act of a court, and partakes of the nature of a judicial proceeding, it has been treated as within the law of Congress of May 26, 1790. In Kentucky a power of attorney was produced, purporting to have been executed by the plaintiff in Virginia, it had been acknowledged by the plaintiff in the county court of the latter State, and the acknowledgment ordered to be certified. It was held that the record of the acknowledgment and order duly certified under the requisitions of the law of Congress, above referred to, sufficiently proved the execution of the power without further evidence, and this although the power itself had not in fact been recorded. Rochester vs. Toler, 4 Bibb. 106. A copy of a deed acknowledged in a court of a neighboring State, and recorded there, was held to come within the act of Congress, in Strode vs. Churchill, 2 Lit. 75. So this court has held that the probate of a will in another State, is a judicial proceeding. The same has been held in Louisiana, Balfour vs. Chew, 5 Mar. N. S. As to the question what effect these records are to have when used in other States, without showing their force in the State where they are created, it does not seem to be settled. In Louisiana it has been held, that if a copy of a similar record would be admissible for any cause, it will be held equally so, when coming from another State, unless the *lex loci* giving it a different effect, be affirmatively shown. Norwood vs. Green, 5 Mar. Lou. The contrary was held in Alabama. Mitchell vs. Mitchell, 3 Stew. and Porter. So it seems is the law in Indiana. Elliot vs. Ray, 2 Black. 31. And this seems to be in consonance with what was said by this court in the case of Wilson vs. Mann, 8 Mo. R. 1, that the court of one State will not take judicial notice of the statute laws of a sister State, but on common law question, the common law of a sister State will be presumed like that which prevails in this State. This question however does not arise in this case, as the laws of Kentucky in relation

to this matter, are in evidence before us, and for the reasons before given, we are of opinion the record would be evidence in her courts.

The record in this case was authenticated under the act of 26th May, 1804. It being a judicial act, it should have been authenticated under the act of 27th April, 1790. One of the Judges is of the opinion that the authentication under the act of 1804, would be a good authentication under the act of 1790. The court not being full, and we supposing from the nature of the suit, and no objection being made to the authentication that the parties are anxious for a trial on the merits, the judgment will be reversed and the cause remanded.

We will observe that this opinion has been formed after mature consideration of the cases of Winney vs. Cartwright, 3 Marshall 493, and Dejarnett's adm'r vs. Fanny, 2 J. J. Mar., which arose under the before recited act of 1800. Moreover, let it be borne in mind, that the case of Talbot vs. David, which was cited by the appellee, was decided long after the act of 1800 took effect, and the deed of emancipation and order were made after that event.

Judge McBride concurring, the judgment is reversed.

Judge Napton did not sit.